UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

BARBARA JEAN RUTH,           )
                             )
    Plaintiff,                )
                             )
v.                           )        No. 3:10-CV-123
                             )        (VARLAN/GUYTON)
MICHAEL J. ASTRUE,           )
Commissioner of Social Security, )
                             )
    Defendant.                )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgement on the Pleadings Or, Alternatively, For Remand to Receive and Consider Additional Evidence [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 22]. Plaintiff Barbara Jean Ruth ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ") John L. McFadyen to deny her benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

The Plaintiff initially applied for Disability Insurance Benefits ("DIB") on July 12, 2002. This claim proceeded through the administrative process, and an ALJ eventually denied her application on October 19, 2004. [Tr. 43-52]. The Plaintiff did not pursue that application further, and on March 16, 2006, she filed applications for DIB [Tr. 91-95] and Supplemental Security

1

Income ("SSI"). [Tr. 96-100]. She alleged a disability onset date of October 20, 2004, the day after the ALJ denied her previous application. [Tr. 91]. These applications proceeded through the administrative process, and on January 10, 2008, the Plaintiff, represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") John L. McFadyen. [Tr. 22-40]. On June 9, 2008, ALJ McFadyen determined that the Plaintiff was not disabled because she could perform her past relevant work as a cashier, food preparation worker, machine operator, packer, and sewing machine operator. [Tr. 9-16]. The Plaintiff requested Appeals Council review, and on January 25, 2010, the Appeals Council declined review making the ALJ's decision the Commissioner's final decision in this matter. [Tr. 1-4]. The Plaintiff has requested judicial review.

## I. ALJ FINDINGS

The ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since October 20, 2004, the alleged onset date (20 CFR 404.1520(b), 20 CFR 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairment: disorders of the back (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).

> 6. The claimant is capable of performing past relevant work as a cashier, food prep worker, machine operator, packer, and sewing machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2004 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 11-16].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment

must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

Plaintiff bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42

U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, the Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV.   ANALYSIS

On appeal, the Plaintiff argues that substantial evidence does not support the ALJ's disability determination. The Plaintiff contends the ALJ erred by: (A) by failing to consider medical records dated before July 2005; (B) finding that the Plaintiff did not meet or equal the listed impairment requirements of 1.04 or 12.02; (C) determining that the Plaintiff was not credible; and (D) failing to give the requisite deference to her examining physician. [Doc. 16 at 17-25]. In the alternative, the Plaintiff argues that the case should be remanded to the ALJ to more fully develop the record in this case. [Doc. 16 at 25-27]. The Commissioner, in response, asserts that in this case (A) the ALJ was not required to discuss evidence from 2002; (B) neither the Plaintiff nor the record supports the Plaintiff's Listings argument with the required medical findings; (C) the ALJ's credibility determination was supported by substantial evidence; (D) the ALJ's rejection of the Plaintiff's one-time examining physician was proper. [Doc. 23 at 9-14]. In addition, the Commissioner contends that there is no need for further development of the record. [Doc. 23 at 14-15].

## A. The ALJ's Failure to Consider Evidence Prior to the Alleged Onset Date

The Plaintiff argues that the ALJ failed to consider her entire medical record in this case. [Doc. 16 at 17]. Specifically, the Plaintiff asserts that the ALJ's failure to consider medical evidence prior to July 2005 is reversible error. [Doc. 16 at 17]. The Commissioner contends that in a prior 2004 administrative decision, ALJ McFayden determined that the Plaintiff was not disabled and the Plaintiff failed to pursue her July 2002 application further. [Doc. 23 at 9]. Instead, the Commissioner asserts, the Plaintiff filed a new application for benefits and identified October 20, 2004 as her alleged onset date. [Doc. 23 at 9]. Therefore, the Commissioner argues that the Plaintiff, by her own actions, has agreed she was not disabled prior to October 20, 2004, and the period of time prior to October 19, 2004 has previously been considered. [Doc. 23 at 9].

The Sixth Circuit Court of Appeals has addressed a similar argument. In Wyatt v. Sec'y of Health & Human Servs., the plaintiff argued that the ALJ erred by not considering an opinion from his treating physician. 974 F.2d 680, 687 (6th Cir. 1992). The Secretary responded that the ALJ did not commit error by failing to consider the treating source's opinion because the opinion was made in relation to the plaintiff's condition prior to his alleged onset date. Id. The court noted that the the treating source's opinion was submitted with the plaintiff's earlier application for benefits, which was subsequently denied. Id. The plaintiff then filed a new application for benefits alleging a later onset date than in his first application. Id. Initially, the court noted that

> This circuit has held that "the Secretary may apply the doctrine of res judicata pursuant to 20 C.F.R. § 404.937(a) to deny consideration of a claim for benefits which raises issues and presents facts previously considered by the Secretary in relation to a prior claim for benefits which was denied."

Id. (quoting Wilson v. Califano, 580 F.2d 208, 210-11 (6th Cir. 1978)). The Court held that, under

6

the facts of the case, there was no requirement that the ALJ consider an opinion of the plaintiff's treating physician which was submitted with the plaintiff's earlier application for benefits. Id.

The holding of Wyatt is applicable to the issue before this Court. In this case, the Plaintiff asserts that the ALJ failed to consider the nature, severity, and duration of his medical problems. The Plaintiff provides the Court with a long list of alleged impairments, such as degenerative disc disease and severe headaches, yet does not assert that ALJ McFayden failed to consider such impairments in his 2004 decision. [Tr. 48-52]. Indeed, after a hearing in April 2004, ALJ McFadyen kept the record open in that case and held a supplemental hearing in September 2004. [48-52]. Ultimately, the ALJ found that the Plaintiff was not disabled in October 2004 and the Plaintiff did not appeal his decision, making the ALJ's decision the final decision of the Commissioner. [Tr. 48-52]. The Plaintiff filed a subsequent application for benefits alleging an onset date of October 20, 2004, a day after ALJ McFayden's first decision . [Tr. 91]. Therefore, as held by the Wyatt court, ALJ McFayden was not required to consider or discuss evidence that related to a prior claim for benefits which was denied and not appealed.

In addition, while the Plaintiff asserts that the ALJ erred by only considering evidence prior to July 2005, she fails to point the Court to a specific medical opinion of record subsequent to the October 19, 2004 decision and prior to July 2005. [Doc. 16 at 4]. Moreover, the ALJ, in his June 2008 decision, considered the evidence prior to July 2005 submitted by the Plaintiff which included school records from 1973. [Tr. 13]. Therefore, the Court does not find the Plaintiff's argument persuasive.

Accordingly, the Court finds that the ALJ was not required to consider or discuss evidence that related to the Plaintiff's 2002 application for benefits in his June 2008 decision.

7

## B. Listing Impairment

The Plaintiff argues that her back condition and mental condition satisfy the requirements of Listing 1.04 and Listing 12.02, respectively. [Doc. 16 at 18]. As support for her argument, the Plaintiff asserts that her back problems are well-documented in the record, and therefore, she meets Listing 1.04. [Doc. 16 at 18]. In addition, the Plaintiff cites Dennis Spjut, P.h.D., as support for her argument that she meets Listing 12.02.[1] [Doc. 16 at 18-20]. The Commissioner responds that the Plaintiff has not supported her "statement" that she meets or equals the requirements of Listing 1.04 with any medical evidence. [Doc. 23 at 10-11]. In addition, the Commissioner contends that the Plaintiff has failed to state which of Dr. Spjut's findings would allow her to satisfy the requirements of Listing 12.02. [Doc. 23 at 17].

A claimant bears the burden of proving that her impairment meets or equals a Listed impairment. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). In order for the ALJ to find that a claimant meets or equals the requirements of a listed impairment, the claimant must meet all the criteria required by such Listing. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). Moreover, a determination of medical equivalency "must be based on medical evidence supported by acceptable clinical and diagnostic techniques." Land v. Sec'y of Health & Human Servs., 814 F.2d 241, 245 (6th Cir. 1986). A claimant does not overcome his burden of proof burden by "almost" establishing a disability. Dorton v. Heckler, 789 F.2d 363, 367 (6th Cir. 1986).

---

[1]The Court notes that the Plaintiff does not challenge the ALJ's findings regarding Listings 1.04 and 12.02, but instead argues that she meets or equals both Listing requirements.

## 1. Listing 1.04

The Plaintiff argues that his back condition meets Listing 1.04. [Doc. 16 at 18]. The Commissioner asserts that the Plaintiff does not identify specific findings to establish that she meets Listing 1.04. [Doc. 23 at 16-17].

Listing 1.04 is defined as the following:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1. In order to prove that she meets or equals Listing 1.04, the Plaintiff must first demonstrate that she has a disorder of the spine that results in compromise of a nerve root. In addition, the Plaintiff must prove that she has one of the three other symptoms described in subsections A, B, and C.

In this case, the Plaintiff does not cite the Court to medical evidence establishing nerve root compression. While the Plaintiff does identify, and the record reflects, that one of her diagnoses is degenerative disc disease, the Plaintiff has failed to establish nerve root compression supported by objective medical evidence. For example, an MRI performed in August 2005 found an absence of "herniation, nerve root entrapment, thecal sac compression or spinal stenosis." [Tr. 296]. In addition, a February 2006 x-ray of the Plaintiff's thoracic spine indicated an old compression fracture of D12, but "[n]o acute bony abnormality detected." [Tr. 295]. Moreover, the Plaintiff has not identified a physician of record who indicates the presence of nerve root compression.

Because compromise of a nerve root or the spinal cord is a threshold requirement for finding an impairment under Listing 1.04, the ALJ's conclusion that the Plaintiff did not meet the requirements of Listing 1.04 is supported by substantial evidence, and review of the additional criteria for an impairment contained in Listing 1.04 subsections A, B, and C is unnecessary.

### 2. Listing 12.02

The Plaintiff argues that due to the diagnoses of Dr. Spjut, the Plaintiff meets Listing 12.02. [Doc. 16 at 18]. The Commissioner contends that the Plaintiff has again failed to identify how she meets or equals the requirements of Listing 12.02. [Doc. 23 at 11].

In order to establish a mental disorder under Listing 12.02, a claimant must present evidence of (1) a medically documented mental disorder and (2) marked limitation in at least two of the following functional limitations: restrictions in daily living; difficulties maintaining social functioning; difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation occurring over an extended duration. 20 C.F.R. pt. 404, subpt. P, app. 1.

Alternatively, a claimant can meet Listing 12.02 if he has a medically documented mental disorder and meets the "C" criteria of the listing. The "C" criteria requires the medical history and documentation of a mental impairment and at least one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1.

In this case, the Plaintiff cites Dr. Spjut's opinion to support her argument that she meets or equals Listing 12.02. After conducting the consultation, Dr. Spjut opined that the Plaintiff would generally not have much difficulty understanding instructions. [Tr. 233]. While Dr. Spjut opined that the Plaintiff was "experiencing significant psychological turmoil which likely would interfere with her ability to focus attention and concentrate on a consistent basis," he did not indicate that the Plaintiff experienced *marked* difficulty in her daily living; maintaining social functioning; maintaining concentration, persistence, or pace; or experienced repeated episodes of decompensation. Moreover, Dr. Spjut failed to note that the Plaintiff met the "C" criteria of Listing 12.02.

Moreover, the record fails to reflect any opinion indicating that the Plaintiff meets or equals Listing 12.02. For example, Andrew J. Phay, Ph.D., reviewed the mental health records for the state agency and opined that the Plaintiff would have only mild restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining

11

concentration, persistence, and pace. [Tr. 245]. Dr. Phay found no evidence that the Plaintiff had suffered any episodes of decompensation of extended duration. [Tr. 245]. Additionally, Dr. Phay stated that his review supported a mental impairment with limitations that were not so severe as to support finding that the Plaintiff met or equaled a listing.[2] [Tr. 247].

Accordingly, the Court finds that substantial evidence supports the ALJ's decision that the Plaintiff does not meet or equal Listing 12.02.

### C. The ALJ's Credibility Determination

The Plaintiff argues that the ALJ failed to follow the proper procedure when evaluating her credibility. [Doc. 16 at 20-21]. The Commissioner contends that the Plaintiff failed to present the Court with evidence that the ALJ's credibility determination was not supported by the record. [Doc. 23 at 13-14].

When evaluating a claimant's credibility "an ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability." Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 542 (6th Cir. 2007) (quoting Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003)). An ALJ's credibility determination is to be "given great weight, particularly since the ALJ is charged with observing the

---

[2]At the end of her Listings argument, the Plaintiff asserts that the Commissioner has failed to sustain his burden that work exists for the Plaintiff in significant numbers in the national and local economies. [Doc. 16 at 20]. The Commissioner responds that the Plaintiff appears to argue that the ALJ's residual functional capacity determination was not supported by substantial evidence. [Doc. 23 at 11]. The Court, however, interprets the Plaintiff's statement as relating to her argument that the ALJ erred in failing to find that her back and mental conditions did not meet or equal a Listing impairment, and therefore, the Commissioner failed to carry his burden when he found the Plaintiff not disabled. The Court, therefore, has addressed the Plaintiff's Listing argument in its entirety.

claimant's demeanor and credibility." Id. The Sixth Circuit Court of Appeals has held, however, that "the ALJ is not free to make credibility determinations based solely upon intangible or intuitive notion about an individual's credibility." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6th Cir. 2007) (internal citation and quotations omitted). An ALJ's determination regarding a claimant's subjective complaints of pain must be made pursuant to the following two-prong test:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions.

Id. (internal citations omitted).

In this case, the ALJ followed the two-prong test outlined by the Rogers court. First, the ALJ found that the Plaintiff's impairments of back pain, right shoulder pain, mental problems, and migraine headaches "could reasonably be expected to produce the alleged symptoms." [Tr. 14].

Second, the ALJ determined that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of her impairments were not credible based on the Plaintiff's daily activities and the medical record as a whole. [Tr. 14-15]. The ALJ stated that the Plaintiff's "report of actual activities including doing housekeeping chores, watching television 12 hours a day, going to the grocery store, and caring for her own personal needs indicates that she is able to get about in a manner which is not significantly restricted." [Tr. 15].

13

While the Plaintiff contends that the ALJ misstated the record regarding her daily activities, the record supports the ALJ's finding. In June 2006, the Plaintiff completed a "Function Report." [Tr. 120-27]. The Plaintiff reported that she made meals "every other day" and that preparing a meal took approximately one to two hours. [Tr. 122]. The Plaintiff stated that she performed household chores for two to three hours every other day. [Tr. 122]. In addition, the Plaintiff noted that she shopped for food every Friday for one to two hours. [Tr. 123]. At the hearing, the Plaintiff testified that she no longer cross-stitches, however, she stated in the Report that her hobbies included cross-stitching, watching television, working puzzles, and reading. [Tr. 124]. Moreover, in an October 2006 Function Report, the Plaintiff stated that her social activities included sitting and talking despite her claims that she unable to sit for long periods of time. [Tr. 123].

Additionally, the ALJ's statement that record failed to support the Plaintiff's claims of disabling pain is supported by substantial evidence. [Tr. 15]. For example, Wayne C. Page, M.D., examined the Plaintiff in March 2008. Dr. Page reported that there were "no objective findings to correlate with any subjective complaints." [Tr. 464]. Dr. Page supported this opinion with objective medical evidence when he stated that the "x-ray report of the lumbosacral spine and SI joints obtained on February 21, 2008 is unremarkable." [Tr. 464]. In addition, state agency physician, Denise P. Bell, M.D., reviewed the Plaintiff's record in January 2007. Dr. Bell opined that although a portion of the Plaintiff's lower back pain was supported by medical evidence, the Plaintiff exaggerated her pain complaints and was not fully credible.

Accordingly, the Court finds that the ALJ's credibility determination was supported by substantial evidence.

## D. The ALJ's Rejection of Dr. Spjut's Opinion

The Plaintiff argues that the ALJ erred by failing to "give the requisite deference to the opinion of consulting psychologist, Dr. Spjut." [Doc. 16 at 25]. Specifically, the Plaintiff states that the Plaintiff asserts that under Social Security Regulation ("SSR") 96-8p, the ALJ failed to give a logical explanation of why he did not adopt the opinions of medical sources that conflict with the ALJ's own RFC assessment. The Commissioner contends that rejection of Dr. Spjut's opinion was proper because Dr. Spjut was not the Plaintiff's treating physician and the ALJ resolved the conflicting medical opinions of record. [Doc. 23 at 12-13].

Social Security Ruling ("SSR") 96-8p requires an ALJ to articulate his reasoning for rejecting a medical opinion that conflicts with his RFC assessment and "explain how any material inconsistencies or ambiguities in the evidence in the record were considered and resolved." 1996 WL 374184, at *7. Specifically, the Ruling states that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id.

In this case, Dr. Spjut was a one time examining source, rather than the Plaintiff's treating physician. On July 31, 2006, the Plaintiff saw Dr. Spjut for a psychological consultation. [Tr. 228-34]. After conducting the consultation, Dr. Spjut opined that the Plaintiff would generally not have much difficulty understanding instructions. [Tr. 233]. He noted, however, that the Plaintiff was "experiencing significant psychological turmoil which likely would interfere with her ability to focus attention and concentrate on a consistent basis." [Tr. 233]. Dr. Spjut also opined that a combination of medical and mental problems would likely interfere with the Plaintiff's ability to maintain schedules, keep attendance, and to sustain a routine in a competitive work environment. [Tr. 233]. Notably, Dr. Spjut suggested referral to the Division of Vocational Rehabilitation because the

Plaintiff had not engaged in effective goal setting for her future. [Tr. 233].

The ALJ rejected Dr. Spjut's opinion of the Plaintiff's limitations. The ALJ articulated that his basis for rejecting the opinion was based on the fact that Dr. Spjut appeared to rely only on the Plaintiff's "subjective complaints." [Tr. 15].

The Court finds that the ALJ sufficiently articulated his reasoning for rejecting the opinion of Dr. Spjut, a one-time examining source. See Thomas v. Comm'r of Soc. Sec., 105 F. App'x 715, 717 (6th Cir. 2004) (finding that rejection of examining source proper when the examining source's opinion was based on subjective complaints and not supported by objective medical evidence). Dr. Spjut failed to identify that he had reviewed objective medical evidence such as the Plaintiff's mental health records indicating any diagnoses or course of mental health treatment. In fact, the Plaintiff indicated that she "had contact at Cherokee Health Systems," yet Dr. Spjut failed to note whether he verified the existence of such records. [Tr. 231]. Moreover, because Dr. Spjut was a one-time examining physician, his decision to rely on the Plaintiff's subjective complaints was not entitled to much weight as he lacked a longitudinal history of the Plaintiff's mental health. See Chadwick v. Comm'r of Soc. Sec., No. 1:07cv856, 2009 WL 777392, at *5 (S.D. Ohio March 20, 2009) (holding that "[b]ased upon the fact that Ms. Lear did not treat Plaintiff and that her opinion is based upon one meeting with Plaintiff and no objective medical evidence, the Court finds that substantial evidence exists to support the weight the ALJ gave to Ms. Lear's opinions.").

The ALJ placed more weight on the opinion of Dr. Page. Dr. Page saw the Plaintiff on March 20, 2008. [Tr. 461-65]. The Plaintiff indicated to Dr. Page that she could walk one-quarter mile and that she could carry twenty pounds a distance of twenty feet. [Tr. 462]. Additionally, the Plaintiff reported depression and said she received treatment for depression as recently as 2005 at

16

Cherokee mental health. [Tr. 462]. Dr. Page opined that the Plaintiff was alert and oriented and appeared in "no apparent distress with normal intellectual functioning, [and] speech." [Tr. 463]. Dr. Page commented that there were no objective findings that correlated with the Plaintiff's subjective complaints. [Tr. 464].

In addition, the ALJ's decision to reject Dr. Spjut's evaluation and not incorporate his finding in the RFC determination is supported by the opinion of Pamela Branton, M.S. In March 2008, Ms. Branton form entitled "Medical Source Statement of Ability To Do Work-Related Activities (Mental)." [Tr. 438]. Ms. Branton opined that the Plaintiff would have no difficulties in understanding and remembering or carrying out simple instructions, and no difficulties in making judgments on simple work-related decisions. [Tr. 438]. Ms. Branton did not fill out the remainder of the form, commenting that some inconsistencies on cognitive testing made further estimation of the Plaintiff's limitations difficult. [Tr. 438].

Accordingly, the Court finds that the ALJ's decision to afford the little weight to the opinion of a one-time examining physician, Dr. Spjut, is supported by substantial evidence.

### E. ALJ's Duty to Develop the Record

The Plaintiff argues that the ALJ had a duty to develop the record based on the evidence that she "suffered from a pineal cyst (concurrent with chronic and severe headaches), a uterine fibroid tumor, and a complex, septated, right ovarian cyst (concurrent with recurrent severe adnexal pain)." [Doc. 16 at 25-26]. The Commissioner contends that the ALJ was not required to order tests for the purpose of making "sure that the [Plaintiff] follows up on suggestions made by her physicians." [Doc. 23 at 14].

17

A claimant bears the burden of providing the ALJ with sufficient evidence proving that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). The Sixth Circuit Court of Appeals has held that only in special circumstance such as "when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures, does an ALJ have a special, heightened duty to develop the record." Nabours v. Comm'r of Soc. Sec., 50 F. App'x 272, 275 (6th Cir. 2002) (citing Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 856 (6th Cir. 1986)). In addition, the Court of Appeals "has cautioned that the determination of whether an ALJ has failed fully to develop the record in derogation of this heightened responsibility must be determined on a case-by-case basis, and that it is clear that a claimant may waive his right to counsel." Id.

In this case, the Plaintiff argues, almost four years after the initial finding of a pineal cyst, that this case should be remanded in order to allow the ALJ to order and review "comprehensive medical tests to determine the pathologies of her uterine fibroid tumor, her complex septated right ovarian cyst, and her pineal cyst." [Doc. 16 at 32].

The Court finds the Plaintiff's argument unpersuasive. At the hearing, the Plaintiff was represented by counsel. In fact, the Plaintiff was represented by the same attorney who is now making the request for the ALJ to order and review additional evidence in this case. Moreover, at the hearing, neither the Plaintiff nor her attorney mad a request for additional testing or for the ALJ to keep the record open in order to submit additional testing. Therefore, because the Plaintiff was represented by attorney who was familiar with hearing procedures, the record does not reflect a special circumstance that would impose a heightened duty on the ALJ to develop the record.

Accordingly, the Court finds that remand is not warranted to more fully develop the record

in this case.

## V. CONCLUSION

For the foregoing reasons, it is hereby **RECOMMENDED** that the Commissioner's Motion for Summary Judgment **[Doc. 22]** is **GRANTED** and that the Plaintiff's Motion for Judgment on the Pleadings or, Alternatively, for Remand to Receive and Consider Additional Evidence **[Doc. 15]** be **DENIED**.[3]

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).